IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHOINETTE MEDLEY | : | CIVIL ACTION |
| *IN HER OWN RIGHT AND AS* | : | |
| *ADMINISTRATRIX OF THE ESTATE OF* | : | No. 12-3877 |
| *NELSIR SCOTT, DECEASED, AND AS* | : | |
| *PARENT AND NATURAL GUARDIAN* | : | |
| *OF STEPFANIE SCOTT, A MINOR* | : | |
| | : | |
| v. | : | |
| | : | |
| INFANTINO, LLC | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                      **March 1, 2013**

Plaintiff Anthoinette Medley[1] asks this Court to remand this case to the Court of Common Pleas of Philadelphia County pursuant to 28 U.S.C. § 1447. Medley also seeks an award of fees and costs incurred as a result of the removal. For the reasons set forth below, the motion to remand will be granted, and Medley will be awarded fees and costs.

**FACTS**

On February 20, 2009, Medley's infant son Nelsir Scott died while Medley was carrying him in a "SlingRider" infant carrier manufactured by Defendant Infantino, LLC, which she alleges she purchased at a Philadelphia Wal-Mart or Kmart store.[2] On June 7, 2010, Medley commenced this tort action by filing a Complaint in the Philadelphia Court of Common Pleas against Infantino. The Complaint also named as Defendants Wal-Mart Stores East, Inc., Wal-Mart Store #2141 (where Medley allegedly purchased one of the SlingRiders), store manager

---

[1] Medley brings this action in her own right, as administratrix of the estate of her deceased infant son Nelsir Scott, and as parent and natural guardian of her minor daughter Stepfanie Scott.

[2] Medley alleges she purchased two SlingRider infant carriers prior to giving birth to her twins, one from a Philadelphia Wal-Mart and one from a Philadelphia Kmart. She does not know which of these carriers she was using to transport Nelsir at the time of his death.

Steve Myers, Sears Holdings Corporation d/b/a Kmart Corporation, Kmart Corporation, Kmart of Pennsylvania, LP, Kmart, and Jeffrey Weiss (the manager of the Kmart store where Medley allegedly purchased the other SlingRider) (collectively the "Retail Defendants").

According to the state court docket, most of the Defendants filed preliminary objections to the Complaint. Medley thereafter filed an Amended Complaint, and Myers and Weiss again filed preliminary objections, which were denied. Myers's motion for reconsideration was also denied. In March 2011, Medley filed a Second Amended Complaint, which is the operative Complaint in this action. In her Second Amended Complaint, Medley sought to hold all of the Retail Defendants liable in negligence for selling a defective and unreasonably dangerous product (i.e., the SlingRider) which they knew or had reason to know was unreasonably dangerous, and for failing to warn purchasers of the dangers associated with the SlingRider. Medley also sought to hold all of the Retail Defendants except the individual store managers strictly liable as sellers of a defective product. Although the Second Amended Complaint acknowledged it could not be "determined with certainty" which of the two SlingRiders purchased by Medley caused her son's death, Medley sought to hold the Retail Defendants liable on "the theory of alternative liability as recognized by § 433(b)(1) of the Restatement (2d) of Torts." Second Am. Compl. ¶ 49.

Following a period of discovery, at least some of which appears to have been directed to the Retail Defendants, *see* Def.'s Mem. in Opp'n to Pl.'s Mot. to Remand (hereinafter "Def.'s Opp'n") 3 & Exs. 5-10,[3] the Retail Defendants filed a motion for summary judgment on March

---

[3] Medley propounded interrogatories and requests for production to Defendants Wal-Mart Stores East, Inc., Wal-Mart Store #2141, and Stephen Myers (collectively the "Wal-Mart Defendants"), Def.'s Opp'n Exs. 5-6, and to Defendants Sears Holdings Corporation d/b/a Kmart Corporation, Kmart Corporation, Kmart of Pennsylvania, LP, Kmart, and Jeffrey Weiss (collectively the "Kmart Defendants"), Def.'s Opp'n Exs. 7-8. Medley also deposed a corporate designee of

30, 2012, Pl.'s Mot. to Remand Ex. B. In support of their motion, the Retail Defendants argued there was no evidence linking the baby carrier in which Nelsir had died to either Wal-Mart or Kmart and maintained the theory of alternative liability was inapplicable. The Retail Defendants also argued they could not be liable for merely selling a product with latent defects absent evidence they knew or should have known of the defects, and the individual store managers could not be liable because there was no evidence those individuals were corporate officers or owners of Wal-Mart or Kmart or that they took any actions that would subject them to liability.

Medley filed an opposition to the summary judgment motion on April 30, 2012. Pl.'s Mot. to Remand Ex. C. Medley argued her own deposition testimony regarding her purchase of a SlingRider from Wal-Mart and from Kmart was sufficient to establish that one of the two stores was the source of the carrier in which Nelsir had died, and further argued because both retailers had sold her the same dangerous product, they could be liable under the alternative liability theory. Medley also argued the individual store managers could be liable for their own negligent conduct because the design defect in the SlingRider was sufficiently well known, having been the subject of published reports, that the managers either knew or should have known the SlingRider presented an unreasonable danger yet continued to sell it.

While the Retail Defendants' summary judgment motion was pending, Medley filed a pretrial memorandum summarizing the facts as well as her theories of liability, causation, and damages, and listing her potential trial witnesses and exhibits. The focus of the pretrial memorandum was overwhelmingly on Infantino. Medley mentioned that she had purchased one

---

Defendants Wal-Mart Stores East, Inc. and Wal-Mart Store #2141 and Defendants Sears Holdings Corporation d/b/a Kmart Corporation, Kmart Corporation, Kmart of Pennsylvania, LP, and Kmart, *id.* Exs 9-10; Pl.'s Mot. to Remand Ex. C at 6 (and Exs. E & F thereto); however, she did not depose either of the store managers.

SlingRider at Kmart and a second, identical model at Wal-Mart, Def.'s Opp'n Ex. 14, at 4, but she did not otherwise mention the Retail Defendants or discuss the theory of alternative liability. Medley did, however, include these Defendants' corporate designees in her list of potential trial witnesses. *Id.* Ex. 14, at 17 (listing Steven Alderson and Kathryn Guerra as potential trial witnesses); Pl.'s Mot. to Remand Ex. C, at 6 (and Exs. E & F thereto) (identifying Alderson and Guerra as Retail Defendants' corporate designees).

On May 24, 2012, the Retail Defendants submitted a supplemental reply in support of their motion for summary judgment, asserting Medley's pretrial memorandum "allege[d] no facts, and ma[de] no argument, relating to any of the Retail Defendants" and "should be considered an abandonment of [her] claims" against those Defendants. Def.'s Nov. 30, 2012, Letter Submission Ex. E.

On June 25, 2012, the trial court entered a two-sentence order summarily granting the Retail Defendants' motion for summary judgment as unopposed. Medley moved for reconsideration on the basis that she had, in fact, filed an opposition to the summary judgment motion. The Retail Defendants opposed reconsideration, conceding Medley had filed a summary judgment opposition, but arguing reconsideration would nevertheless be futile because Medley had abandoned her claims against the Retail Defendants by failing to discuss them in her pretrial memorandum. Medley filed a reply disputing that she had abandoned her claims against the Retail Defendants. In her reply, Medley noted her pretrial memorandum had described her purchases of two identical SlingRider carriers from the Retail Defendants and asserted "[t]he purchase of the defective product from the retail defendants is the only fact necessary to support a product liability claim against them." Pl.'s Mot. to Remand Ex. F. By order of July 2, 2012, the trial court granted Medley's motion for reconsideration, vacated its June 25, 2012, order

4

granting summary judgment in favor of the Retail Defendants, and granted summary judgment in favor of the Retail Defendants as follows:

> Further, upon consideration of the motion for summary judgment, Control No. 12034341, and the response thereto, it is hereby ORDERED that said Motion is GRANTED and all claims against Defendants Wal-Mart Stores East, Inc., Wal-Mart Store #2141, Steve Myers, Sears Holdings Corporation d/b/a Kmart Corporation, Kmart of Pennsylvania, LP, Kmart, and Jeffrey Weiss are dismissed.

Def.'s Opp'n Ex 13.

The July 2 order granting summary judgment was docketed on July 10, 2012, and Infantino filed a notice of removal the same day, asserting that with the dismissal of the Retail Defendants, the case had become removable based on diversity jurisdiction. Medley timely filed the instant motion to remand on July 18, 2012. *See* 28 U.S.C. § 1447(c) (providing a motion to remand a case "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal").

**DISCUSSION**

Medley asks this Court to remand this case to the Philadelphia Court of Common Pleas on the basis that the notice of removal was filed beyond the one-year limit to remove an action based on diversity of citizenship, among other reasons. Under the version of the statute in effect at the time this action was filed in state court,

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction

conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).[4]

This case was filed in state court on June 7, 2010, and Infantino was served with the Complaint on June 11, 2010. As a result, the notice of removal, filed on July 10, 2012, more than two years after the case was filed, was untimely under the applicable version of § 1446(b), which provides a case may not be removed based on diversity jurisdiction "more than 1 year after commencement of the action." Infantino argues this one-year bar is inapplicable because Medley engaged in "flagrant forum manipulation" by joining the Retail Defendants, failing to vigorously prosecute her claims against them, and then voluntarily abandoning her claims against them after the one-year limitation expired. Def.'s Opp'n 12. Infantino argues this conduct justifies an equitable exception to the one-year time limitation in § 1446(b).

Infantino relies primarily on *Tedford v. Warner-Lambert Co.*, 327 F.3d 423, 424 (5th Cir. 2003), in which the Fifth Circuit Court of Appeals held the one-year limitation on removal in § 1446(b) is subject to equitable exception. In *Tedford*, the plaintiff, together with a co-plaintiff, sued an out-of-state pharmaceutical company and an in-state doctor, who had treated only the co-plaintiff. When the plaintiff's claims against the pharmaceutical company were severed and transferred for improper venue, the company notified the plaintiff of its intent to remove the suit to federal court based on diversity jurisdiction. The plaintiff immediately amended her complaint to name her own in-state treating physician as a defendant. The pharmaceutical

---

[4] The statute has since been amended to permit a defendant to remove a case based on diversity of citizenship beyond the one-year limit if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." 28 U.S.C. § 1446(c)(1). However, this exception only applies to actions commenced on or after the amendment's January 2012 effective date.

company removed the case anyway on the basis of fraudulent joinder, but the district court granted the plaintiff's motion to remand. The case proceeded in state court, and plaintiff took no discovery from the nondiverse physician defendant. Just prior to the one-year anniversary of the filing of the action, the plaintiff signed a notice of nonsuit, post-dated to the day after the expiration of the one-year period, but did not notify the pharmaceutical company of the nonsuit until after the one-year period in which to remove the case had expired. Upon learning of the nonsuit, the pharmaceutical company again removed the case ten days after the one-year deadline, arguing the plaintiff's pattern of forum manipulation justified an equitable exception to the one-year limitation.

The Fifth Circuit agreed. As a matter of first impression, the court held the one-year limitation was subject to equitable exception, noting "[t]ime requirements in lawsuits between private litigants are customarily subject to 'equitable tolling,'" *id.* at 426 (quotation omitted), and citing its own prior decision holding the one-year limit was not jurisdictional but could be waived, *id.* The court then held the plaintiff's pattern of forum manipulation—including her initial filing of a claim against a physician against whom neither she nor her co-plaintiff could state a claim under state law, her amendment of her complaint to name her own physician as a defendant to prevent removal, and her manipulation of the one-year limitation by post-dating her nonsuit of her physician to just after the deadline for removal expired—"justifie[d] application of an equitable exception in the form of estoppel." *Id.* at 427-28.

Although the Third Circuit Court of Appeals has not addressed whether the one-year limitation in § 1446(b) is subject to equitable exception, the Third Circuit, like the Fifth Circuit, has concluded the one-year time limit is not jurisdictional and can be waived. *See Ariel Land Owners v. Dring*, 351 F.3d 611, 613-16 (3d Cir. 2003) ("Because failure to remove within the

7

one-year time limit established by § 1446(b) is not a jurisdictional defect, a district court has no authority to order remand on that basis without a timely filed motion."). This suggests the one-year time limit may be subject to equitable considerations. *See Various Plaintiffs v. Various Defendants ("Oil Field Cases")*, 673 F. Supp. 2d 358, 364 (E.D. Pa. 2009) (suggesting the "practical effect" of the Third Circuit's holding that the one-year limit on removal is not jurisdictional "is to open the door to an examination of equitable considerations in deciding whether to allow exceptions to the one year limitation on removal"); *see also Corinthian Marble & Granite, Inc. v. T.D. Bank, N.A.*, No. 12-3744, 2013 WL 272757, at *6 (E.D. Pa. Jan. 24, 2013) (quoting *Oil Field Cases*, 673 F. Supp. 2d at 364). Even assuming § 1446(b) is subject to equitable exception, however, Infantino has not demonstrated such an exception is warranted in the circumstances of this case.

Infantino argues Medley's joinder of the Retail Defendants in this action constitutes "flagrant forum manipulation" because she (1) failed to vigorously prosecute the state court action with respect to the Retail Defendants, and (2) then voluntarily abandoned her claims against them. Def.'s Opp'n 12. As to the former consideration, Infantino focuses on Medley's alleged failure to take discovery from the Retail Defendants regarding her purported purchase of a SlingRider carrier. As Medley notes, however, she did pursue some such discovery, having propounded requests for production seeking "[a]ny and all documents relating to the purchase and sale of the product involved in this incident." Def.'s Opp'n Ex. 6, at 4 (Wal-Mart Defendants), Ex. 8, at 4 (Kmart Defendants). Moreover, despite the apparent lack of documentary evidence regarding her purchase, Medley may have elected to rely on her own

8

testimony that she in fact purchased two identical SlingRiders, one from each Defendant store.[5] Consistent with her theory that the Retail Defendants could be liable in negligence for selling a product they had reason to know was defective, *see* Second Am. Compl. ¶ 45, Medley does appear to have pursued discovery regarding the Retail Defendants' knowledge of safety issues regarding the SlingRider, *see, e.g.*, Def.'s Opp'n Exs. 9-10. While such discovery does not appear to have produced much evidence favorable to Medley, as demonstrated by the lack of record citations in her summary judgment opposition, the fact her claims against the Retail Defendants ultimately proved weak does not suggest she had no intention of pursuing such claims. Further, in her Second Amended Complaint and on summary judgment, Medley took the position all of the Retail Defendants except the individual store managers could be strictly liable simply for selling a defective product. Second Am. Compl. ¶¶ 51-52; Pl.'s Mot. to Remand Ex. C, at 8.[6]

Infantino also argues Medley's forum manipulation is evidenced by the fact she voluntarily abandoned her claims against the Retail Defendants once she believed the case was no longer removable. Infantino contends the trial court recognized Medley's abandonment of her claims in its order granting the Retail Defendants' motion for summary judgment; however, it is not clear that this is true. The Retail Defendants raised the issue of abandonment in their

---

[5] As noted, Medley conceded she did not know whether the SlingRider in which she was carrying Nelsir at the time of his death had been purchased at Wal-Mart or at Kmart; however, she argued because she had purchased identical defective SlingRiders at both stores, both retailers could be liable under the theory of alternative liability.

[6] Infantino does not argue removal is justified because Medley's claims against the Retail Defendants lacked a "reasonable basis in fact" or "some colorable legal ground." *See Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 32 (3d Cir. 1985) (holding joinder of a nondiverse defendant is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant"). Nor could Infantino raise such an argument at this juncture, as any such argument would have been apparent from the face of the Complaint, and would therefore have been capable of being raised within 30 days of service.

supplemental reply in support of their motion for summary judgment, asserting Medley's failure to discuss her claims against the Retail Defendants in her pretrial memorandum should be considered an abandonment of those claims. The Retail Defendants also raised the issue of abandonment in opposing Medley's motion for reconsideration of the trial court's order granting their summary judgment motion as unopposed, arguing reconsideration would be futile given that Medley had abandoned her claims. When the trial court ruled on the motion for reconsideration, it noted it had considered the Retail Defendants' opposition; however, the court did not deny reconsideration as the Retail Defendants had advocated, but instead granted reconsideration, vacated its prior summary judgment ruling, and then granted the motion for summary judgment, "upon consideration of the motion . . . and the response thereto." Def.'s Opp'n Ex. 13. If anything, the wording of the trial court's order granting reconsideration and granting summary judgment suggests the court granted the motion on its merits, and not based on abandonment.

Infantino also re-argues the abandonment issue to this Court, citing case law for the proposition that a plaintiff's failure to mention a claim in a pretrial memorandum constitutes an abandonment and waiver of the claim as a matter of law. The cases on which Infantino relies, however, do not support its position. In *Bombar v. West American Insurance Co.*, 932 A.2d 78, 91-92 (Pa. Super. Ct. 2007), the Pennsylvania Superior Court held a defendant insurance company had failed to preserve for appeal the issue of whether the plaintiff had sufficiently pleaded a claim for statutory bad faith where the defendant did not object to the sufficiency of the plaintiff's complaint until after trial. The defendant maintained it had properly preserved the issue by raising it in a pretrial damages memorandum, but, upon review of the pretrial memorandum cited by the defendant, the Superior Court disagreed, finding "no contention that

[plaintiff's] complaint did not sufficiently plead a claim for statutory bad faith." *Id.* Having found the relevant issue was not raised in the defendant's pretrial memorandum, and "[s]ince [defendant] ha[d] not otherwise cited to a place in the record where it preserved this issue in the court below," the Superior Court held the issue was waived under Pennsylvania Rule of Appellate Procedure 302(a). *Id.* *Bombar* thus represents a straightforward application of Appellate Rule 302(a), which provides "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Burgess v. City of Philadelphia*, No. 1775, 1983 WL 265397 (Pa. Ct. Com. Pl. Feb. 7, 1983), also does not support Infantino's position. In *Burgess*, the Court of Common Pleas noted in a footnote that although the plaintiff's complaint had included claims under 42 U.S.C. §§ 1985 and 1986, the plaintiff had abandoned those claims. *Id.* n.24. In support of the assertion the claims had been abandoned, the court cited certain pages of the plaintiff's pretrial memorandum, the notes of testimony, and the plaintiff's brief. *Id.* The court did not suggest the plaintiff had abandoned the claims by failing to mention them in his pretrial memorandum, and there is no basis to infer such a holding from the brief mention of abandonment in the footnote. Finally, in *Faulk v. Husqvarna Consumer Outdoor Products N.A., Inc.*, 849 F. Supp. 2d 1327, 1330 (M.D. Ala. 2012), the court held the plaintiff had abandoned his claims against the sole nondiverse defendant where the plaintiff not only failed to mention his claims against that defendant in his "pretrial contentions" but had "not *even attempted* to serve [plaintiff]" as of the date of the pretrial conference, despite having had a clear opportunity to effect service at the defendant's own deposition.

Although Medley's pretrial memorandum admittedly says little about the Retail Defendants, the authority cited by Infantino does not persuade this Court that Medley's limited reference to the Retail Defendants in her pretrial memorandum constitutes an abandonment of

her claims against those Defendants as a matter of law. Notably, Medley was actively opposing the Retail Defendants' motion for summary judgment at the time her pretrial memorandum was filed, a circumstance that undermines any inference of abandonment.

It is undoubtedly true Medley prefers to try this case in state court for tactical reasons.[7] However, the circumstances of this case do not suggest the kind of blatant forum manipulation present in *Tedford*. Medley did not fail to pursue discovery from the Retail Defendants, and she consistently opposed the Retail Defendants' efforts to obtain dismissal of the claims against them, even after the one-year time limit had expired. Moreover, although Infantino characterizes Medley as having abandoned her claims against the Retail Defendants, the claims are more properly regarded as having been dismissed on the merits. As a result, even if § 1446(b) is subject to equitable exception, such an exception is not appropriate here. Accordingly, because Infantino's notice of removal was filed beyond the one-year time limit to remove a case based on diversity of citizenship, the motion to remand will be granted.

Medley also asks this Court to award her the costs and fees incurred as a result of Infantino's removal. *See* 28 U.S.C. § 1447(c) ("An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."). Such fees may be awarded "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

Although Infantino cites a number of cases in which district courts outside the Third Circuit have permitted removal based on diversity jurisdiction after the one-year limitation in

---

[7] Similarly, Infantino prefers to try this case in federal court for its own tactical reasons. *See* Def.'s Opp'n 6 n.3 (stating Infantino removed the case "so as to conduct expert discovery, which is not permitted in Pennsylvania state courts," among other reasons).

§ 1446(b) had expired, *see* Def.'s Opp'n 12 n.10, virtually all of these cases involve plaintiffs who failed to pursue and then voluntarily dismissed claims against nondiverse defendants, or who claimed damages below the jurisdictional amount only to increase their demands after the one-year limit had passed.[8] In *Cousins v. Wyeth Pharmaceutical, Inc.*, No. 08-310, 2008 WL 1883932, at *1-2 (N.D. Tex. Apr. 18, 2008), for example, the plaintiff failed to serve the nondiverse medical defendants with an expert report supporting her claims, as required to state a health care liability claim under state law, prompting the nondiverse defendants to move to dismiss the claims against them. When the out-of-state pharmaceutical defendant removed the case, the plaintiff moved to remand, representing to the federal court that she would vigorously contest the dismissal of the nondiverse defendants in state court. On remand, however, the plaintiff instead "voluntarily dismissed the nondiverse defendants as soon as it appeared to her that she was safely in state court," thereby revealing her forum manipulation. *Id.* at *2. In *Vidaurri v. H.M.R. Properties*, No. 06-1124, 2007 WL 1512029, at *2 (W.D. Tex. Mar. 8, 2007), after her original action for $100,000 in damages resulting from a negligently maintained hot water heater was removed to federal court, the plaintiff allowed the case to be dismissed and then filed a new state court action seeking only $60,000 for the same incident. After the one-year limitation had passed, however, the plaintiff produced an estimate of damages of $90,000.

Unlike these fact patterns, there is no similar evidence of forum manipulation here. While Infantino's argument that the one-year limitation in § 1446(b) is subject to equitable

---

[8] The lone exception is *Villaje del Rio, Ltd. v. Colina del Rio, LP*, No. 07-947, 2008 WL 2229469, at *1-2 (W.D. Tex. May 28, 2008), in which the court permitted a defendant that had not been served until after the case was removed to federal bankruptcy court to again remove the case after it was remanded, even though more than a year had passed since the suit was filed. That case is inapposite to the circumstances presented here.

exception is objectively reasonable, the argument that such an exception is appropriate in this case is not. Therefore, Medley's request for costs and attorneys' fees will be granted.

An appropriate order follows.

BY THE COURT:


    /s/ Juan R. Sánchez
Juan R. Sánchez